UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL ACTION NO.:  6:20-CR-71-CHB-HAI

UNITED STATES OF AMERICA                                             PLAINTIFF

V.                              **SENTENCING MEMORANDUM**

DANIEL RANDALL RAMSEY-GREENE                           DEFENDANT


Comes now the Defendant, Daniel Randall Ramsey-Greene, by counsel, and hereby submits the following sentencing memorandum setting forth factors the Court should consider in determining the type and length of sentence sufficient, but not greater than necessary, to comply with the applicable law set forth in 18 U.S.C. § 3553(a), *U.S. v. Booker*, 543 U.S. 220 (2005) and *U.S. v. Fanfan*, 542 U.S. 963 (2004). This matter is before the Court for sentencing as a result of the Defendant's plea of guilt to Count One and Count Two of the indictment, production of child pornography, a violation of 18 U.S.C. § 2251(a). In support hereof, Defendant relies upon the following discussion of applicable law, relevant facts and circumstances which have important bearing upon consideration of a just sentence in this matter.

In  United States v. Booker, 543 U.S. 220 (2005), the United States Supreme Court held that the United States Sentencing Guidelines are not a mandatory constraint on the District Court's sentencing discretion. In Booker, the Supreme Court found the United States Sentencing Guidelines (U.S.S.G.) unconstitutional insofar as it required

courts to consider conduct at sentencing that was not proven by the government beyond a reasonable doubt to a jury. As such, the court concluded that the Sentencing Guidelines were simply one of several factors which should be considered pursuant to 18 U.S.C. § 3553(a) in determining an appropriate sentence. As such, the obvious will be stated at the outset.

18 U.S.C. § 3553(a) establishes seven (7) factors that shall be considered by the Court in imposing any sentence. Those factors, and their application to this case, are discussed below:

1. **The nature and circumstances of the offense and the history and characteristics of the defendant;**

Daniel was born on April 19, 1994, in Bell County, Kentucky to David Randall Greene and Tatrina Miracle. Daniel's parents married when Daniel was born, and then divorced when he was a young child. Daniel primarily lived with his mother and sister but would spend every other weekend with his father until his teenage years. During Daniel's sophomore year of high school Daniel's father learned that Daniel was homosexual. Daniel's father became violent, threatened Daniel and disowned him. Soon thereafter Daniel requested and was granted a Domestic Violence Order restraining his father from having any contact with him. Daniel stopped all communication with his father after that. Later in life Daniel and his father began communicating with one another again, but only sporadically. Throughout Daniel's teenage years Daniel's mother did not work and relied on Government assistance and child support payments as the source of income for her household, which included Daniel, his brother David Ramsey, sister April Sampson and half-sister Savannah Daniels. Daniel's grandparents provided financial assistance occasionally when needed.

Daniel reports he had a good childhood and had everything he needed, even though money was tight. Daniel has always had a close relationship with his mother, and she was supportive of him and his siblings. Although Daniel was not personally subjected to abuse, he did witness violence between his mother and father when he was no more than 5 years old.

Daniel attended Bell County High School where he earned a high school diploma, and a Nursing Aid Certificate. In 2013 Daniel worked at Save-A-Lot as a cashier in Middlesboro, Kentucky. He resigned from his position in 2014, when he started school at Southeast Kentucky Community and Technical College, majoring in art. He ultimately obtained an Associates of Arts Degree. In 2019 Daniel began working at Tri-State Health and Rehabilitation Center in Harrogate, Tennessee as a dietary aide.

On October 6, 2014, Daniel married John David Greene, in Lee County, Virginia. Daniel met John through a social medial website. In 2016 Daniel and his husband completed foster care training and soon thereafter became foster parents of their first child, Isiah Greene-Ramsey. In 2019 the couple adopted Isiah who was then 17 years old. Daniel and John have fostered 5 additional children as well. John and Isiah continue to reside in Middlesboro, Kentucky. John has been very supportive of Daniel throughout the court proceedings.

Daniel's current physical health is "okay". In 2009 he started having sinus issues and later underwent surgery for those issues. Unfortunately, the surgery was unsuccessful, and Daniel still has significant difficulty breathing. Daniel has had issues with cysts since 2012 and has had several surgically removed. He currently has them on his chin and ear.

Daniel has suffered from depression since his early teens. Although he was never medicated for it, he did seek treatment and attended outpatient mental health counseling in 2019 in Middlesboro, Kentucky. He attended three of those counseling sessions but stopped when he was arrested for state charges related the matter before this Court. While he has had thoughts of suicide, he has never acted on it. He did cut himself a few times when he was a teenager. Since his incarceration his depression has gotten worse and he has since been prescribed Zoloft as treatment.

Daniel has a lengthy history of alcohol and cannabis abuse. He began using cannabinoids when he was 15-16 and would use approximately two times per day. Daniel has suffered from alcohol abuse since the age of 17. He did receive counseling for the alcohol abuse but continued to drink and make poor decisions. By the time Daniel was arrested in December 2020 he was drinking approximately eight servings of liquor per day and smoking approximately 3 g of marijuana daily.

Daniel has admitted and pled guilty to two counts of Production of Child Pornography and knows that there are serious consequences for those actions. While there is no excuse for Daniel's actions, alcohol use was the primary factor for his conduct during each incident. Each time Daniel was intoxicated he was not thinking about his conduct, the impact his conduct would have on each of the children involved or the consequences such conduct would have on his family and his future. Alcohol clearly clouded Daniel's judgment and led to conduct which was life changing for all involved. These actions were out of character for Daniel, as is evident from a review of his criminal history (little to none) and the letters of support from his family and friends. Please see support letters attached hereto and identified as "Exhibit A". With regard to Daniel's

actions, it is important to understand their context and extent. As for the charge related to

production of a pornographic image related to Victim 1, the production resulted from a

wireless camera capturing an image of the victim and automatically sending it to Daniel's

smart phone. After receiving the image Daniel sent the picture of Victim 1 to Victim 1.

No other distribution occurred. With regard to the photograph involving Victim 2, that

image was found on Daniel's phone as a result of the search conducted after his arrest.

There is no indication that the photograph was ever distributed to anyone. In fact, Daniel

does not recall taking the photograph, but clearly and readily acknowledges it was on his

phone and must've been taken by him. Daniel was intoxicated during both events. None

of the above is intended to excuse Daniel's conduct. Rather, this explanation provides

much-needed context with regard to Daniel's conduct.

        At the request of counsel, and with approval of the Court, Daniel was evaluated

by Dr. Kristen M. Schramm, Psy.D., an evaluating forensic psychologist. Daniel was

diagnosed with Alcohol Use Disorder, Cannabis Use Disorder and Pedophilic Disorder.

Dr. Schramm concluded that these disorders do not warrant placement in an inpatient

treatment facility, but that Daniel would benefit from mental health treatment to address

his behavior and substance abuse. Daniel hopes that while he is in prison he will receive

the treatment he needs in order to help him cope with his impulses and the other mental

health and substance abuse issues from which he suffers. Dr. Schramm explains in her

report that the Bureau of Prisons utilizes a Risk-Need-Responsibility model to determine

which treatment resources should be directed towards individual inmates who are at the

highest risk of re-offense based on validated assessment procedures. Considered in its

totality, Dr. Schramm's report does not attempt to provide an opinion as to the likelihood

Daniel will reoffend. However, there is no indication in the report that he is likely to reoffend, particularly if he receives treatment while incarcerated. It is clear from Dr. Schramm's report that the BOP has the resources available to determine the treatment and services necessary for Daniel to safely and successfully reintegrate into society once released from incarceration. Given that Daniel will be required to permanently register as a sex offender and will be monitored by the United States Probation Office for a significant period of time after he is released, the court can have confidence that he will not pose a danger to the community after his release from incarceration.

> 2. **The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes; (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

As previously stated, production of child pornography is a very serious crime, one that should never be taken lightly. The Court is obligated to impose a sentence in this matter that recognizes the seriousness of the crime and promotes respect for the law. While Daniel expects to pay for the crime he has committed, he wants to receive treatment while he is incarcerated to address the cause of his conduct. Daniel understands that his actions were illegal. Daniel has been incarcerated since his initial arrest and has spent many months in jail. This knowledge, experience, mental health treatment and substance abuse treatment will deter him from committing any crimes in the future. A lengthy sentence of incarceration accomplishes the sentencing requirements described above. However, a life sentence is not warranted or necessary in this matter.

3. **The kinds of sentences available**;

As noted in Daniel's Presentence Investigation Report (PSI), Daniel's total offense level in this case is 43 with a Criminal History of I, resulting in a guideline range of life imprisonment.  A period of incarceration is required; probation is not appropriate in this matter. However, the statutorily authorized minimum sentence is 15 years and the maximum sentence is 30 years. The applicable guideline range far exceeds the guideline term of imprisonment of 720 months.

While the fine range for the instant offense is from $50,000.00 to $250,000.00, Daniel's financial circumstances do not warrant a fine, and no fine is recommended by the probation officer.

 4. **The kinds of sentences in the sentencing range established by the United States Sentencing Guidelines**;

Probation is not available to Daniel in this case.

5. **Any pertinent policy statement established by the Sentencing Commission**;

Daniel is unaware of any "pertinent policy statement established by the sentencing commission" which would have a bearing on the sentencing in this matter.

6. **The need to avoid unwarranted sentencing disparities among defendants with similar records or who have been found guilty of similar conduct; and**

When considering all the facts and circumstances of this case, there do not appear to be any unwarranted sentencing disparities presented in this case.

7. **The need to provide restitution to any victims of the offense**.

The Probation officer has recommended that the Defendant be ordered to pay restitution, however the PSIR indicates no restitution amounts have been identified or requested by the victim(s) in this case.

As established in *United States v. Booker*, 125 S. Ct. 738, 756 (2005), the Sentencing Guidelines are merely one of seven factors that must be considered in determining an appropriate sentence. Consideration of the factors discussed above and their applicability to the facts and circumstances in this matter is warranted and required.

It has been said that the primary goals of the justice system are to punish wrongdoers, make victims of crime whole and to hold a person who has committed a crime accountable while attempting to rehabilitate him so he may return to the community and become a productive citizen. Daniel respectfully asserts that an analysis and application of 18 U.S.C. § 3553(a)(1) and (2), along with the facts and circumstances that gave rise to this indictment, results in a conclusion that imposition of a sentence of 180 months with enrollment in a comprehensive mental health treatment program and substance abuse program while he is incarcerated is proper.

WHEREFORE, the Defendant respectfully and humbly requests that he be sentenced to a term of incarceration as described above.

Respectfully Submitted,

/s/ Michael B. Fox
Michael B. Fox
Fox Law Office
P.O. Box 1450
Olive Hill, KY 41164
(606) 286-5351
(606) 286-5352 (fax)
mike@foxlaw1.com
*Counsel for Defendant,*
*Daniel Randall Ramsey-Greene*

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2022, I electronically filed the foregoing with the clerk of the court by using CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Michael B. Fox